**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAYNETTA WALKER, ET AL,** | ) | |
| | ) | **No. 20-CV-1379** |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | **Hon. Andrea Wood** |
| **CITY OF CHICAGO,** | ) | |
| **and URT UNITED ROAD TOWING, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## INTRODUCTION

For decades, the City has impounded the vehicles of owners who commit multiple parking or traffic violations and do not pay their tickets after repeated attempts by the City to obtain payment.  These efforts include giving notice and the opportunity to contest (or pay) when the underlying tickets are issued; when the vehicle becomes eligible for immobilization (also known as "booting"); when the vehicle actually is booted; and when the vehicle is impounded. If, after all this process, an owner still declines to properly respond, the vehicle ultimately may be disposed of, although it is first held for a period of time (which can be extended upon request) to allow the owner to respond and meet the requirements for retrieving the vehicle.

Plaintiffs claim that their vehicles were disposed of under this program, and that disposal constitutes a taking without compensation, is an unconstitutional seizure, and violates the City's Municipal Code.  All of these claims fail.  The disposal is not a taking because it is not an exercise of the eminent domain power, nor are vehicles taken for a public use.  As the D.C. Circuit held after reviewing a virtually identical program (and relying on Supreme Court precedent), disposal occurs at the tail end of an escalating enforcement process akin to forfeiture proceedings, for which no compensation is required by takings doctrine.  Plaintiffs' unconstitutional seizure claim fails because disposal is a much later act from the vehicle's seizure (the impoundment), and the Fourth Amendment's seizure rules apply only to the act of the seizure itself.   And Plaintiffs' claim under the City's Municipal Code cannot be squared with the code's plain text.  Plaintiffs argue that the code requires two notices to be sent after a vehicle is impounded and before it is disposed of, but that the City only sent one.  The applicable code provision, however, indicates that only one notice was required in this instance.  For all these reasons, the Court should dismiss all claims against the City.

1

**BACKGROUND**

Plaintiffs are two individuals whose cars were impounded and disposed of pursuant to section 9-100-120 of the Municipal Code of Chicago ("MCC"). Amend. Compl. ("AC") ¶¶ 57, 59. That section governs the immobilization (also known as "booting"), towing, and disposal of vehicles whose owners accrue but do not pay a certain number of tickets for parking, compliance, or other vehicle-related violations. An overview of the process follows:

When an owner receives a ticket, the owner can pay it, or challenge it through a hearing at the City's Department of Administrative Hearings. See MCC § 9-100-040(a), -045, -050. If the owner ignores the ticket by not paying or contesting, or responds by contesting but then loses the challenge, a determination of liability is entered. See MCC § 9-100-050(a), (d); 9-100-090.

When an owner has three or more unpaid determinations of liability in total, or two unpaid determinations that are more than a year old, the vehicle becomes eligible for booting. See MCC 9-100-120(b). At that point, the owner is sent a notice of "impending vehicle immobilization" listing the outstanding tickets. Id. The owner then has 21 days to pay the amounts, and, if the owner does not, the vehicle is placed on an immobilization list. Id. Within that 21 days, the owner can also challenge the notice of impending immobilization by showing that he does not have the requisite number of tickets, or that he has already paid them. Id.

After a vehicle is placed on the immobilization list, it can be booted when discovered on the street. If the vehicle is booted, the owner has at least 24 hours to pay the outstanding amounts or enter into a payment plan before the vehicle is towed, and additional time may be requested. See MCC § 9-100-120(c), (d)(1) & (2). The owner also has 21 days to seek a hearing to challenge the booting or any subsequent impoundment. See MCC § 9-100-120(c), (e). A

2

notice explaining how the owner can get the boot released by paying the amounts due or requesting a hearing is placed on the vehicle at the time of booting.  See MCC § 9-100-120(c).

If the vehicle is ultimately towed and impounded, the owner is sent a notice by certified mail within 10 days.  See MCC § 9-100-120(f).  The notice informs the owner that he may request a hearing to challenge the immobilization and impoundment.  Id.  It also states that, if the vehicle is not claimed within 21 days from the date of the notice, the vehicle may be sold or otherwise disposed of, although the owner may also request a 15-day extension.  Id.

In sum, the City provides vehicle owners with notice and a hearing opportunity at each stage of the process:  It is provided for each underlying ticket as those tickets are accrued; then again prior to the vehicle being deemed eligible for immobilization; then again once the vehicle is booted; and then again after the vehicle is impounded.  A vehicle is disposed of at the end of this process only if the owner either serially ignores these opportunities or proves unsuccessful in his challenges and fails to pay the amounts due or enter into a payment plan.

## ARGUMENT

### I.    Plaintiffs' Federal And State Constitutional Claims Should Be Dismissed.

### A.    Plaintiffs fail to state a takings claim (Counts I, II, IX, and X).

In Counts I and II, Plaintiffs argue that the City committed an unconstitutional taking when it disposed of their impounded vehicles without paying compensation.  And in Counts IX and X, Plaintiffs contend, more specifically, that a taking resulted when the City failed to send two notice letters after the vehicles were impounded and prior to disposal.  Plaintiffs bring these claims under both the Takings Clause of the Federal Constitution and Article I, Section 15 of the Illinois Constitution.  Under Illinois' "limited lockstep doctrine," the Illinois takings provision is

interpreted in line with the Federal provision, so the analysis is the same for both.  See Hampton v. Metro. Water Reclamation Dist. of Greater Chicago, 2016 IL 119861, ¶ 31.

Plaintiffs' takings claims fail for two reasons.  First, a taking does not arise where the government acquires property pursuant to a lawful exercise of authority other than the eminent domain power.  That is the case here:  The City impounds (and, if there is no appropriate response, disposes of) vehicles like Plaintiffs' not as an exercise of eminent domain, but instead as part of a graduated process of increasing statutory penalties designed to secure compliance with its parking and traffic laws.  Second, there was no taking because Plaintiffs' vehicles were not taken "for public use."

### 1.    Plaintiffs' vehicles were impounded and disposed of pursuant to lawful government power other than eminent domain.

It is well established that "the government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."  Bennis v. Michigan, 516 U.S. 442, 452 (1996).  Thus, in Bennis, the Supreme Court held that there was no taking, and hence no compensation was due, when the government seized and obtained forfeiture of a vehicle used illegally.  The Court explained that the forfeiture process was a lawful proceeding in which the property interest in the vehicle was transferred from the owner to the state, and, so long as the proceeding did not violate due process, the owner's interest could be extinguished without constituting a taking.  See id. at 452.  The Court emphasized that this procedure is "too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced."  Id. at 453.

Following Bennis, the D.C. Circuit applied this rationale to a municipal parking enforcement system nearly identical to the one presented here.  See Tate v. District of Columbia 627 F. 3d 904 (D.C. Cir. 2010).  In Tate, the plaintiff's vehicle was booted and towed after the

plaintiff failed to pay three parking tickets.  Id. at 906-07.  After the vehicle remained unclaimed

for 15 days, the city sent a single written notice informing the plaintiff that if she failed to claim

her vehicle within a certain period, the vehicle would be disposed of.  Id.  She did not reclaim her

vehicle and it was sold at auction.  Id.  The plaintiff then sued the city under a variety of theories,

including a takings claim.  The claim was dismissed by the district court, and the D.C. Circuit

upheld the dismissal.  Relying on Bennis, the D.C. Circuit explained that there was no takings

claim because the city was acting under authority other than eminent domain.  Specifically, the

city's "practice of auctioning a vehicle when tickets go unpaid is the culmination of a sort of

graduated forfeiture process," one which, like the forfeiture procedure in Bennis, is "firmly

fixed" in remedial jurisprudence.  Id. at 909 (quoting Bennis, 516 U.S. at 453).  The court

concluded that, "if the District's impoundment of Tate's vehicle did not deprive her of due

process—and we have already concluded it did not—then there was no unlawful taking and no

compensation is due for the lawful taking that did occur."  Id.  Other courts have come out the

same way when reviewing the impoundment of vehicles for unpaid tickets.  See Missud v.

California, 2013 WL 450391, at *4 (N.D. Cal. Feb. 5, 2013), aff'd, 538 F. App'x 809 (9th Cir.

2013); Deligiannis v. City of Anaheim, 2010 WL 1444538, at *8 (C.D. Cal. Mar. 2, 2010), aff'd,

471 F. App'x 603 (9th Cir. 2012).

This case is no different.  Plaintiffs' vehicles were impounded and disposed of not as an

exercise of eminent domain, but as the last step in a graduated statutory process – the vehicle

immobilization program set forth in MCC § 9-100-120 – designed to enforce compliance with

the City's parking and traffic laws.  And Plaintiffs do not allege that this system violates due

process, nor could they, given all of the process the City provides.  As described in detail above,

that process provides ample notice and hearing opportunities to owners when they are issued

tickets, when their vehicle then becomes eligible for booting, when the vehicle then is actually booted, and when the vehicle is ultimately impounded. Accordingly, and as was the case in Tate, Plaintiffs' have no takings claim. Indeed, as Judge Bucklo previously held after reviewing the City's parking ticket immobilization program, and relying upon Bennis, "the City may establish a regime of progressive penalties that culminates in the forfeiture of scofflaw vehicle owners' property rights." Robledo v. City of Chicago, 778 F. Supp. 2d 887, 895 (N.D. Ill. 2011). Under this system, "the City does not . . . legislate out of existence plaintiffs' property interest in their vehicles," but instead uses a system where an owner's interest "is gradually eroded, and then ultimately extinguished, after he repeatedly violates the City's regulations and repeatedly fails to pay (or successfully to contest) the penalties associated with those violations." Id. at 897.

Plaintiffs take no issue with the underlying lawfulness of the City's procedures, except in one regard: They contend that, at the very end of the process, the City erred because it was required by the MCC to send two notices to the owner prior to disposal, but that the City sent only one. AC ¶ 114. But Plaintiffs do not contend that this alleged error violated due process (as might support a takings claim), and therefore it is irrelevant to the takings analysis. Even more, Plaintiffs are simply wrong about what the MCC required. As explained below in Part II.A, the MCC required only a single notice before Plaintiffs' vehicles could be disposed of.

Plaintiffs also cite to In re Fulton, 926 F.3d 916 (7th Cir. 2019), but that case does not help them. Fulton did not hold that the disposal of vehicles as the end point of the City's ticket immobilization program is an exercise of eminent domain or otherwise implicates takings concerns. Indeed, the case did not even involve vehicles that had been disposed of. Instead, Fulton concerned vehicles that the City was still holding until the owners paid their tickets, and the question was whether the City was required by the Bankruptcy Code to release those vehicles

when the owners filed for bankruptcy. The owners argued that the City was violating the automatic stay entered by operation of the Bankruptcy Code because the City was continuing to "exercise control" over their property. The City, in turn, argued that the terms of the automatic stay provisions did not apply, and that, even if they did, particular enumerated exceptions to the automatic stay permitted the City to hold the vehicles.

Plaintiffs invoke <u>Fulton</u>'s discussion of the second exception addressed by the Court – an exception in 11 U.S.C. § 362(b)(4) providing that a bankruptcy petition does not stay an action or proceeding by a governmental unit to enforce that unit's "police and regulatory power." The Court applied two tests developed in the caselaw for addressing the exception, and ultimately concluded that, "on balance," the City's holding of a vehicle belonging to a bankruptcy debtor "is an exercise of revenue collection more so than the police power." 926 F. 3d at 930. Relying on this, Plaintiffs seek to avoid <u>Bennis</u> and <u>Tate</u> by arguing that the City's impounding and disposal of their vehicles was not done pursuant to the police power.

This approach fails, for two reasons. First, Plaintiffs' argument is beside the point. Even if the City's impoundment program were purely an effort to collect revenue rather than exert the police power, that would not make it a taking, because collecting revenue from a debtor is not an exercise of the eminent domain power. As explained above, a taking does not occur when property is seized pursuant to lawful authority other than eminent domain. And seizing a vehicle to collect revenue is not eminent domain. <u>See also</u> <u>In re Murphy</u>, 331 B.R. 107, 128 (Bankr. S.D.N.Y. 2005) (sale of real property for failure to pay property taxes is not a taking "because such sale is pursuant to the state's taxing power and not its power of eminent domain").

Second, Plaintiffs' argument is not supported by <u>Fulton</u> on its own terms. <u>Fulton</u> did not hold that the City's actions were not an exercise of the police power. Rather, the Court expressly

acknowledged the presence of the City's police power interests and merely concluded, for purposes of a statutory bankruptcy analysis, that the City's revenue collection interests were "on balance" more prominent. Fulton therefore supports the City, because it indicates that the City's actions *do* implicate the police power. Indeed, one of the two tests used in Fulton expressly recognizes that the government is exercising the police power and simply asks whether "the focus" of that power is "the debtor's financial obligations rather than the [government's] health and safety concerns." Id. at 930 (citation omitted). Fulton thus aligns with other cases holding that the impoundment of vehicles for unpaid tickets is an exercise of the police power. See Missud, 2013 WL 450391, at *4 ("Towing cars that have accumulated an excessive number of parking tickets is an exercise of police power."); Deligiannis, 2010 WL 1444538, at *8 (impoundment of vehicle for unpaid tickets was "pursuant to [city's] police power").

This is fatal to Plaintiffs' claim, for, as even they concede, "confiscation of property will not be considered a taking if the confiscation is a lawful exercise of that government's police powers." AC ¶ 73. See also AmeriSource Corp. v. United States, 525 F.3d 1149, 1153 (Fed. Cir. 2008) ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause."). For these reasons, Plaintiffs' takings claims should be dismissed.

### 2. Plaintiffs' vehicles were not taken for public use.

Plaintiffs' takings claims fail for a separate and independent reason – they were not taken for public use. The purpose of the Takings Clause is to "bar Government from forcing some people alone to bear public burdens which, in fairness and justice, should be borne by the public as a whole." See Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123-24 (1978) (internal quotations omitted). To state a takings claim, therefore, a plaintiff must show, among

other things, that the government has taken his property for public use, see Knick v. Twp. of Scott, Pennsylvania, 139 S. Ct. 2162, 2181 (2019), such as when the government seizes real property to be used as a park or highway.  See Home Builders Ass'n of Greater Chicago v. City of Chicago, 213 F. Supp. 3d 1019, 1028 (N.D. Ill. 2016).  In such a case the property is taken not because of anything the property owner did, but because the public has need for the property.

This case is nothing like that.  Indeed, Plaintiffs do not identify any public use for which their vehicles were disposed of.   Plaintiffs' vehicles were instead seized under a program directed at particular individuals who flout the City's parking and traffic laws and, after extensive notice and hearing opportunities, fail to pay their tickets.  As Plaintiffs themselves allege, "[t]he whole purpose" of the City's program "is to coerce vehicle owners into paying the debts they owe the City."  AC ¶ 26.  This does not implicate takings doctrine.  Indeed, even confiscation of real property for failure to pay a government debt, such as property taxes, does not constitute a taking.  See Balthazar v. Mari Ltd., 301 F. Supp. 103, 106 n.6 (N.D. Ill.), aff'd, 396 U.S. 114 (1969) (government sale of owner's real property for failure to pay property taxes does not require just compensation because "[r]ather than taking private property for a public purpose, Illinois is here collecting taxes which are admittedly overdue"); In re Murphy, 331 B.R. at 128 (town acquiring property valued at $1 million for failure to pay approximately $30,000 in property taxes did not violate the Takings Clause).  In such cases, the government is seeking to induce compliance with a financial obligation of the individual, and not to acquire property for public use.  The same logic applies here.  The City did not take Plaintiffs' vehicles to repurpose them for a public use; indeed, Plaintiffs allege the City disposed of them.  That is not a public use under the takings clause.  Plaintiffs' takings claims should therefore be dismissed for this separate reason.

### B.      Plaintiffs Fail To State An Unlawful Seizure Claim.

In Counts XI and XII, Plaintiffs claim that the City's disposal of their vehicles constituted an unconstitutional seizure under both the Fourth Amendment and Article I, section 6 of the Illinois Constitution.  Here again, the claims are governed by the same standard, because the Illinois provision is construed in lockstep with the Fourth Amendment.  See People v. Caballes, 221 Ill. 2d 282, 314 (2006).  And under that standard, Plaintiffs have no claim, because the Fourth Amendment governs *seizures* of property, and not what the government does with the property after it is seized:  "[O]nce an individual has been meaningfully dispossessed [of a vehicle by its impoundment], the seizure of the property is complete."  Bell v. City of Chicago, 835 F.3d 736, 741 (7th Cir. 2016).  Accordingly, Plaintiffs' vehicles "[were] seized when [they were] impounded," and the Fourth Amendment therefore ceased to govern the City's later actions.  See  Lee v. City of Chicago, 330 F.3d 456, 466 (7th Cir. 2003) (rejecting Fourth Amendment challenge to City's post-impoundment practices); Bell, 835 F.3d at 741 (same); Bennett v. Dutchess Cty., New York, No. 17 CV 7516 (VB), 2019 WL 2918051, at *3 (S.D.N.Y. July 8, 2019) ("[T]he government's continued retention of property does not constitute an additional seizure or transform a lawful seizure into an unlawful one.").  Plaintiffs' unlawful seizure claims should therefore be dismissed.

### C.      Even if Plaintiffs had valid constitutional claims, their request for injunctive and declaratory relief should be dismissed.

In Counts I, IX, and XI, Plaintiffs seek declaratory and injunctive relief for the alleged takings and seizure violations.  That relief, however, is improper here even if the disposal of Plaintiffs' vehicles did amount to a constitutional violation, because Plaintiffs lack standing for injunctive or declaratory relief.  To have standing to seek prospective injunctive relief, Plaintiffs "must face a 'real and immediate' threat of future injury as opposed to a threat that is merely

'conjectural or hypothetical.'" Simic v. City of Chicago, 851 F.3d 734, 738 (7th Cir. 2017). Similarly, to seek declaratory relief, "Plaintiffs do not have to await consummation of the injury, but the injury must, at the very least, be impending." Tobin v. City of Peoria, Ill., 939 F. Supp. 628, 635 (C.D. Ill. 1996) (citing Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 296-98 (1979). But Plaintiffs do not allege, nor can they, that they face a real and immediate threat of having a car disposed of in the future under MCC § 9-100-120. Indeed, any such disposal would be preceded by the waves of pre-impoundment notice and hearing described above (as well as opportunities to pay any outstanding debt), thus providing numerous entry points at which Plaintiffs could intervene to stave off a disposal. Courts presume that people will conform their behavior to the law, and a plaintiff cannot establish standing for injunctive and declaratory relief where one would have to presume that the plaintiff will break the law in the future. See id.; City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983). Here, though, the Court would have to assume that Plaintiffs will ignore these notices and not pay their outstanding tickets going forward. They therefore lack standing for injunctive and declaratory relief.[1] Counts I, IX, and XI should therefore be dismissed for lack of standing.

## II.     Plaintiffs' Remaining Claims, All Brought Under State Law, Fail.

In addition to the federal and state constitutional claims discussed above, Plaintiffs bring a variety of other claims under state law, raised in Counts III, V, VI, and VIII. These claims should all be dismissed. Three of them – Counts V, VI, and VIII – are based on the argument

---

[1] Lack of standing aside, injunctive relief is generally not appropriate for takings claims, except in rare circumstances not present here. Int'l Union of Operating Engineers Local 139 v. Schimel, 863 F.3d 674, 678 n.2 (7th Cir. 2017). Moreover, an injunction is appropriate only when there is no adequate remedy at law, see U.S. ex rel. Walner v. NorthShore Univ. Healthsystem, 660 F. Supp. 2d 891, 899 (N.D. Ill. 2009), but here, such a remedy is available (assuming that a future disposal would constitute a taking): monetary compensation for the value of the vehicle.

that the MCC required the City to send two notices prior to disposing of Plaintiffs' vehicles rather than one. In these claims, Plaintiffs seek various forms of relief based on the alleged failure to send two notices. See Count V (declaratory and injunctive relief); Count VI (unjust enrichment); Count VIII (mandamus). All of these "two notice" claims fail as a matter of law because Plaintiffs rely on a provision of the MCC – section 9-92-100(a) – that did not apply to the disposal of their vehicles. Instead, a different provision applied – section 9-100-120(f) – and, under that provision, only one notice was required. Because the City was not required to send two notices here, Plaintiffs' three state law claims seeking relief predicated on the lack of a second notice fail as a matter of law and should be dismissed.

The remaining state law claim (Count III) is for unjust enrichment based on the theory that disposal of Plaintiffs' vehicles amounted to an unconstitutional taking. See Count III. This claim fails because, as discussed above, the disposal of Plaintiffs' vehicles was not a taking. Moreover, the City has not otherwise been unjustly enriched.

### A. The "two notice" claims (Counts V, VI, and VIII) fail because the MCC required only one notice.

Plaintiffs claim that section 9-92-100(a) required the City to send two notices of impoundment after their vehicles were impounded and before the vehicles could be disposed of. See AC ¶¶ 58, 60, 63, 67(a), 93, 96, 106, 121, 125. That section does require two notices, as its text authorizes disposal if the City has sent an initial and an "additional" notice of impoundment. But, critically, section 9-92-100(a) only applies to certain types of impoundments. Section 9-92-100(a) is located in Chapter 9-92 of the MCC, which pertains to vehicles that need to be immediately towed (rather than towed after a graduated enforcement process for nonpayment of tickets) because, for example, they are in a hazardous condition or are obstructing the public way by blocking a loading zone or fire lane. See § 9-92-030 (listing grounds warranting an

12

immediate tow).

Plaintiffs' vehicles, however, were not impounded for these reasons. Instead, Plaintiffs' vehicles were impounded following immobilization for non-payment of tickets, and therefore a different section of the MCC governed: section 9-100-120. That section, entitled "Immobilization program," sets forth the comprehensive process for impounding and disposing of vehicles that are immobilized and then impounded due to the owner not paying final determinations on tickets. See in particular § 9-100-120(b); see also AC ¶ 28. And section 9-100-120's post-impoundment notice and disposal provision requires only that a single notice be sent. Specifically, subsection (f) states in relevant part that "[w]ithin ten days after a vehicle has been impounded, "a" notice of impoundment shall be sent." This reference to "a" notice in the singular stands in contrast to the word choice used in section 9-92-100(a), which, as noted above, speaks of an initial notice and an "additional" notice.

Further textual evidence shows that only a single notice was required here. First, looking again at section 9-100-120(f), the provision makes clear that disposal may occur without a second notice, because it says that the notice that is sent is to inform the owner that "if the vehicle is not claimed within 21 days from the date of notice, the vehicle may be sold or otherwise disposed of," although the owner may request a 15 day extension. Id. That is, the only prerequisites to disposal are the sending of a single notice and the passage of 21 (or 36) days without the vehicle being claimed. Second, looking back to section 9-92-100(a), the "additional notice" required by that section only pertains to vehicles for which the first notice of was sent "pursuant to Section 9-92-070(a) or (b)." MCC § 9-92-100(a). Here, however, the notice of impoundment was not given pursuant to section 9-92-070(a) or (b), but rather section 9-100-120(f).

Indeed, Plaintiffs admit that their vehicles were impounded under section 9-100-120.  See AC ¶¶ 57, 59.  See also id. ¶¶ 24, 25, 27, 33 (describing City's procedures for booted vehicles and referencing various provisions in § 9-100-120).  And Plaintiffs make no claim that the City failed to send the notice required by 9-100-120(f) or otherwise comply with that section. Because that section required only one, and not two, notices, Plaintiffs' claim that the City violated the MCC by not sending two notices of impoundment prior to disposal fails as a matter of law.

All of the counts predicated on this theory (Counts V, VI, and VIII) should therefore be dismissed because the predicate legal theory underlying those claims is erroneous.  Indeed, without a valid legal claim, there is no basis for injunctive or declaratory relief (Count V).[2]  Nor is there a basis for a writ of mandamus (Count VIII).  A "writ of mandamus is a remedy at law to command a public official to perform some ministerial, non-discretionary duty in which the party seeking such relief has established a clear right to have it performed and a corresponding duty on the part of the official to act."  People ex rel. Ryan v. Ret. Bd., Fireman's Annuity & Ben. Fund of Chi., 483 N.E.2d 1037, 1039 (Ill. App. Ct. 1985).  But Plaintiffs' cannot establish a clear right to the relief of two notices, since, under section 9-100-120, only one notice is required.

Plaintiffs' unjust enrichment claim based on the lack of two notices (Count VI) likewise has no footing.  "Under Illinois law, there is no stand-alone claim for unjust enrichment. Illinois courts describe it as a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence."  Benson v. Fannie May Confections Brands, Inc., 944 F.3d 639, 648 (7th Cir. 2019) (citation omitted) (quotation marks omitted).  See

---

[2]  Further, Plaintiffs lack standing for injunctive and declaratory relief because they do not allege, nor can they allege, that they are reasonably likely to have their vehicles disposed of in the future.  See Section I.C. above, which applies with equal force here.

also Mulligan v. QVC, Inc., 382 Ill. App. 3d 620, 631 (2008) ("[Unjust enrichment] is not a separate cause of action that, standing alone, would justify an action for recovery."). Here, there is no unlawful conduct that would support unjust enrichment, because, assuming that Plaintiffs only received one notice of impoundment, that was lawful under the MCC, as explained above. Without any valid legal anchor, Plaintiffs cannot claim that the City was unjustly enriched. See Benson, 944 F.3d at 648 (the request for relief under unjust enrichment is tied to the underlying legal theory and fails along with it); Martis v. Grinnell Mut. Reinsurance Co., 388 Ill. App. 3d 1017, 1025 (2009). For all these reasons, Counts V, VI, and VIII should be dismissed.

**B.     The unjust enrichment claim based on an alleged taking (Count III) fails.**

Count III is another unjust enrichment claim, one seeking relief based on the theory that the disposal of Plaintiffs' vehicles was an unconstitutional taking. But just like Count VI, this claim should be dismissed in its totality because there is no unlawful conduct that undergirds it – the disposals were not takings. See supra at 3-9. Additionally, Count III should be dismissed to the extent it seeks return of fines and penalties paid to the City, as Plaintiffs do not allege ever paying any fines and penalties. To state a claim for unjust enrichment, a plaintiff must allege that the defendant received and retained a benefit, Enger v. Chicago Carriage Cab Co., 77 F. Supp. 3d 712, 718 (N.D. Ill. 2014), aff'd, 812 F.3d 565 (7th Cir. 2016), but Plaintiffs do not allege any monetary benefit that the City received from them.

**CONCLUSION**

For the foregoing reasons, Counts I, II, III, V, VI, VIII, IX, X, XI, and XII should be dismissed as against the City, and with no claim remaining against the City, the City should be dismissed from this action.

Date: August 11, 2020

Respectfully submitted,

ANDREW W. WORSECK
JENNIFER ZLOTOW
PETER H. CAVANAUGH
City of Chicago, Department of Law
Constitutional and Commercial Litig. Div.
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602

MARK A. FLESSNER,
Corporation Counsel for the City of Chicago

By:    /s/ Andrew Worseck
               Chief Assistant Corporation Counsel

*Attorneys for Defendant City of Chicago*