## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DANYETTA WALKER, et al.,       )
                                  )
        Plaintiffs,       )
                                  )     No. 20-cv-01379
       v.                    )
                                  )     Judge Andrea R. Wood
CITY OF CHICAGO, et al.,      )
                                  )
        Defendants.     )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Joseph Walawski and Danyetta Walker failed to pay traffic ticket fines each owed to the City of Chicago and, as a result, their respective vehicles were towed, impounded, and sold for well below market value. Moreover, they did not receive payment or credit against their debts as a result of the sales. Plaintiffs believe the City's practice violates the Fifth and Fourth Amendments to the United States Constitution, as well as Illinois constitutional, state, and local law. And so they have brought this putative class action against Defendants City of Chicago ("City") and United Road Trucking ("URT") to obtain injunctive and declaratory relief as well as damages. Defendants each have moved to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. Nos. 31, 41.) For the reasons given below, Defendants' motions are granted in part and denied in part.

## BACKGROUND

For the purposes of Defendants' motions to dismiss, the Court accepts as true the well-pleaded facts in the First Amended Complaint and views those facts in the light most favorable to Plaintiffs. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015). The First Amended Complaint alleges as follows.

The City towed 19,665 cars in 2017 because of unpaid ticket debt. (Am. Compl. ¶¶ 1–2, Dkt. No. 27.) Pursuant to the Municipal Code of Chicago ("MCC"), when vehicle owners have two tickets that are unpaid for more than a year or three tickets that are unpaid at any time, the owners are subject to a series of escalating enforcement actions. (*Id.* ¶ 2.) The City begins by immobilizing, or "booting," the car, after which the vehicle's owner has twenty-four hours to pay their ticket debt and associated fines, penalties, boot fees, and other costs. (*Id.* ¶ 3.) Next, the City tows and impounds the car, adding a $150 tow fee and daily fees of twenty to thirty-five dollars for storage. (*Id.* ¶ 4.) If the owner does not timely pay the balance, the City takes possession of the vehicle and can add it to its fleet, auction it off, or sell it for scrap. (*Id.* ¶ 5.) Typically, the City sells the car for scrap for around $200. (*Id.*) The owner receives no compensation or credit against their debt for the disposition of their vehicle. (*Id.* ¶ 6.)

Plaintiffs allege that the purpose of this enforcement scheme is to collect debts owed to the City. (*Id.* ¶ 27.) While the underlying municipal ordinance describes its purpose as to "enforce[e] the parking, standing, compliance, [and automated traffic and speed enforcement system] ordinances of the traffic code," the City only tows cars after a finding of liability has been entered and fines and penalties have been assessed. MCC § 9-100-120(a)–(b). Unpaid ticket tows are administered by the City Comptroller's Department of Finance, not by Streets and Sanitation or the Police Department. (*Id.* ¶ 30.) The City received around $4 million for selling scrapped vehicles in 2017 and an additional $10 million in boot and storage fees. (Am. Compl. ¶ 38.) The threat of the accelerating penalties also helped the City to collect around $345 million in fines and penalties in 2018—nine percent of its total operating revenue. (*Id.*) After towing a vehicle, the City sends a notice of vehicle impoundment. (*Id.* ¶ 53.) No subsequent notice is provided when the City is about to dispose of the vehicle. (*Id.*)

2

URT, a Delaware corporation headquartered in Mokena, Illinois, provides towing and auto pound management services to the City. (*Id.* ¶ 12.) As a contractor, URT is responsible for every step of the process between the initial tow and disposal of unclaimed vehicles. (*Id.* ¶ 56.) When a vehicle's owner cannot afford to pay for its release, or the vehicle otherwise goes unclaimed, the City sells it to URT at scrap value. (*Id.* ¶ 55.) In 2017, URT paid around $4 million to the City in exchange for 24,000 towed vehicles with an estimated value of more than $22 million. (*Id.*)

Plaintiff Walawski is a resident of Cook County, Illinois. (*Id.* ¶ 10.) URT towed and impounded his vehicle, a 2016 Nissan Sentra, on behalf of the City on May 19, 2018 because of unpaid ticket debt. (*Id.* ¶¶ 59, 61.) The City subsequently sold his vehicle—which was relatively new and in excellent condition—to URT for $204.48, providing no compensation to Walawski and offering him no opportunity (such as a hearing) to determine fair compensation for his vehicle. (*Id.* ¶ 59.) Walawski still owes more than $17,000 to PNC Bank for his loan on the vehicle, and the City has placed holds on business licenses for which Walawski applied based on his unpaid ticket debt. (*Id.* ¶ 61.) Plaintiff Walker also resides in Cook County. (*Id.* ¶ 9.) URT towed and impounded her vehicle, a 2000 Chrysler Concorde, on behalf of the City on February 27, 2019 because of unpaid ticket debt. (*Id.* ¶ 57.) Her vehicle was also sold at scrap value, and she was not compensated for her vehicle or offered a hearing to determine fair compensation. (*Id.*)

Plaintiffs propose to represent two classes: (1) "All vehicle owners who had their vehicle impounded and disposed of by the City of Chicago pursuant to MCC § 9-100-120" (the "Class"), and (2) "All vehicle owners who had their vehicle towed by or through the Department of Streets and Sanitation pursuant to [MCC § 9-92] that were disposed of by the City" (the "Notice Class"). (*Id.* ¶¶ 62, 63.)

3

Plaintiffs assert twelve claims in the First Amended Complaint, including four on behalf of the Class (Counts I–IV) and eight on behalf of the Notice Class (Counts V–XII). Count I seeks declaratory and injunctive relief on behalf of the Class for the alleged taking and disposal of vehicles in violation of the Takings Clause of the Fifth Amendment (and the corresponding provision of the Illinois Constitution). Count II seeks damages for the Class pursuant to 42 U.S.C. § 1983 for the allegedly unlawful policy, custom, or practice of taking vehicles without just compensation. Counts III and IV assert Illinois state-law claims for unjust enrichment against the City and URT, respectively, based on the alleged takings that form the basis for Counts I and II. Count V seeks declaratory and injunctive relief on behalf of the Notice Class that would prevent Defendants from disposing of unclaimed vehicles without sending required notices pursuant to the MCC and the Illinois Vehicle Code. Counts VI and VII assert claims for unjust enrichment against the City and URT, respectively, based upon the alleged failures to provide notice. Count VIII seeks mandamus relief on behalf of the Notice Class against the City requiring the sending of additional required notices of impending vehicle disposal consistent with the MCC and the Illinois Vehicle Code. Counts IX and X mirror Counts I and II in seeking declaratory and injunctive relief and damages from Defendants for the disposal of vehicles in violation of Takings Clause (and the corresponding provision of the Illinois Constitution), on the additional basis that the City failed to follow the MCC's requirements by not sending a second required notice. Finally, Counts XI and XII seek declaratory and injunctive relief as well as damages pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment (and the corresponding provision of the Illinois Constitution) that occurred when the City unlawfully seized Plaintiffs' vehicles.

**DISCUSSION**

Defendants have moved to dismiss all Plaintiffs' claims pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). The same plausibility standard applies under Rule 12(b)(1). *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (Court must determine if complaint's allegations "plausibly suggest a claim of subject[-]matter jurisdiction" in reviewing Rule 12(b)(1) motion).

I.      **Takings Clause (Counts I, II, IX, and X)**

The Fifth Amendment's Takings Clause provides: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Accordingly, "[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002). To state a claim for violation of the Takings Clause, a plaintiff must allege "(1) that the governmental entity 'took' his property, either through a physical taking or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal) was taken, the government has not

5

paid just compensation." *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021).[1] "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170 (2019).[2]

Plaintiffs assert four claims for violations of the Takings Clause. In Counts I and II, Plaintiffs contend that the City violated the Takings Clause by failing to compensate them when disposing of their vehicles. These claims present a facial challenge to the constitutionality of the progressive penalties scheme established by MCC § 9-100-120. In addition, in Counts IX and X, Plaintiffs claim that the City further violated the Takings Clause by sending only one (not two) notices after the vehicles were impounded, violating the MCC's requirements and thereby depriving the City of authority to dispose of the vehicles. The second Takings Clause theory advanced by Plaintiffs does not challenge the validity of the progressive penalty scheme but instead rests on the alleged unlawfulness of the taking and disposing of vehicles without providing the notice required by that scheme. The Court addresses each theory in turn.

### A.   Taking

The City first contends that its seizure and sale of Plaintiffs' vehicles did not qualify as "takings" for purposes of the Takings Clause. It is well-established that a "taking" does not occur every time the government takes private property. For instance, a long line of cases establishes that the government may take property associated with criminal activity, even when the owner is

---

[1] The Takings Clause was incorporated against the States by the Fourteenth Amendment. *See Kelo v. City of New London*, 545 U.S. 469, 472 n.1 (2005).

[2] Plaintiffs' claims under Article 1, Section 15 of the Illinois Constitution (prohibiting takings without just compensation) are evaluated in lockstep with the federal Takings Clause. *See Hampton v. Metro. Water Reclamation Dist. of Greater Chi.*, 57 N.E.3d 1229, 1234 (Ill. 2016) (Illinois Takings Clause analyzed under same standard as federal Takings Clause, except that Illinois clause also protects against damage to property).

innocent or ignorant of the property's use. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974) (leased yacht carrying marijuana); *Van Oster v. Kansas*, 272 U.S. 465 (1926) (automobile used to transport illegal liquor during prohibition); *The Palmyra*, 25 U.S. 1 (1827) (pirate ship that attacked United States vessel). Such forfeitures are not considered takings because of "the historical background of forfeiture statutes in this country and this Court's prior decisions sustaining their constitutionality." *Calero-Toledo*, 416 U.S. at 680. Forfeiture statutes "further the punitive and deterrent purposes that have been found sufficient to uphold, against constitutional challenge, the application of other forfeiture statutes to the property of innocents," specifically by "preventing further illicit use of the conveyance and by imposing an economic penalty, thereby rendering illegal behavior unprofitable." *Id.* at 686–87.

In *Bennis v. Michigan*, 516 U.S. 442 (1996), the Supreme Court found that a forfeiture scheme survived a Takings Clause challenge similar to the one raised here. In *Bennis*, the petitioner's vehicle had been forfeited as a public nuisance after her husband was found to have engaged in sexual activity with a prostitute there. *Id.* at 443. The petitioner raised a due process challenge under the Fourteenth Amendment, claiming that she was entitled to contest the abatement of her vehicle on the ground that she did not know her husband would use it to violate Michigan's indecency law. *Id.* at 446. The Supreme Court, however, rejected any requirement of such an "innocent owner" defense in a forfeiture proceeding, concluding:

> At bottom, petitioner's claims depend on an argument that the Michigan forfeiture statute is unfair because it relieves prosecutors from the burden of separating co-owners who are complicit in the wrongful use of property from innocent co-owners . . . We conclude today, as we concluded 75 years ago, that the cases authorizing actions of the kind at issue are "too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced."

*Id.* at 453 (quoting *J.W. Goldsmith, Jr.-Grant Co. v. United States*, 254 U.S. 505, 511 (1921)).

The *Bennis* Court then went on to dispose of the petitioner's Takings Clause claim, explaining that "if the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State." *Id.* at 452. And "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Id.* (citing *United States v. Fuller*, 409 U.S. 488, 492 (1973); *United States v. Rands*, 389 U.S. 121, 125 (1967)).

The D.C. Circuit has applied *Bennis* in rejecting constitutional challenges to a District of Columbia vehicle forfeiture scheme strikingly similar to the City's program. *See Tate v. D.C.*, 627 F.3d 904, 906 (D.C. Cir. 2010). Finding no violation of the plaintiff's due process rights, the D.C. Circuit in *Tate* found that "there was no unlawful taking and no compensation is due for the lawful taking that did occur." *Id.* at 909. Instead, the District of Columbia's scheme served as "a sort of graduated forfeiture process," under which the owner had multiple opportunities to pay the tickets or contest the proceedings. *Id.* The District of Columbia's scheme was thus found to be, "like the *Bennis* forfeiture process, 'firmly fixed in the punitive and remedial jurisprudence of the country.'" *Id.* (quoting *Bennis*, 516 U.S. at 453). *See also Robledo v. City of Chicago*, 778 F. Supp. 2d 887, 899 (N.D. Ill. 2011) (relying on *Bennis* in granting summary judgment in favor of the City as to the plaintiffs' claim that the City's impoundment and forfeiture program violated their due process rights).

Applying *Bennis* here, this Court similarly concludes that the City's vehicle forfeiture scheme does not, on its face, violate the Takings Clause. The City was permitted to establish a "regime of progressive penalties that culminates in the forfeiture of scofflaw vehicle owners' property rights" without violating the Takings Clause. *Robledo*, 778 F. Supp. 2d at 895.

Plaintiffs' argument to the contrary relies largely on the Seventh Circuit's decision in *In re Fulton*, 926 F.3d 916 (7th Cir.), *vacated and remanded sub nom. City of Chicago v. Fulton*, 141 S. Ct. 585 (2021), to argue that the City's towing of vehicles is not an exercise of police power. But that decision was subsequently vacated and the case remanded by the Supreme Court. And in any case, *In re Fulton* dealt with the exception to the automatic stay provision under Chapter 13 of the Bankruptcy Code found in 11 U.S.C. § 362(b)(4), which provides that the automatic stay does not reach some exercises of a government's police or regulatory power. *In re Fulton*, 926 F.3d 916, 927. It did not address the constitutional questions at issue here. For this reason, Plaintiffs have not stated a claim based on the facial challenge to the constitutionality of MCC § 9-100-120 in Count I and II. Those claims are dismissed.

The same rationale, however, does not resolve Plaintiffs' Takings Clause claims in Counts IX and X. As Plaintiffs point out in their response brief, those counts rest on a different legal theory than Counts I and II. (*See* Pl.'s Consolidated Resp. in Opposition to Defs' Mots. To Dismiss at 6, Dkt. No. 45.) With respect to the latter two counts, Plaintiffs do not claim that the City's vehicle impoundment and disposal scheme is unconstitutional on its face; rather, Plaintiffs assert that the manner in which Defendants carry out the disposal of vehicles is not a lawful exercise of police power because the City does not comply with the notice requirements in MCC § 9-92-100. As discussed above, *Bennis* holds that, "[t]he government may not be required to compensate an owner for property which it has already ***lawfully*** acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis*, 516 U.S. at 452 (emphasis added). Here, however, Plaintiffs allege that Defendants ***unlawfully*** acquired vehicles by taking and disposing of them without providing required notices. While Defendants argue that the City is not, in fact, required to send two notices prior to disposing of impounded vehicles, for

reasons discussed below, this Court concludes that Plaintiffs have sufficiently pleaded the City's failure to comply with the two-notice requirement. Accordingly, Plaintiffs have alleged the unlawful acquisition and disposal of vehicles, and *Bennis* does not preclude their Takings Clause claims. *See Santiago v. City of Chicago*, 446 F. Supp. 3d 348, 368 (N.D. Ill. 2020). The Court thus proceeds to consider whether Plaintiffs have sufficiently pleaded that their vehicles were taken for public use for purposes of Counts IX and X.

### B. Public Use

To state a Takings Clause claim, Plaintiffs must allege that their property was taken for public use. That is because the Takings Clause "bar[s] Government from forcing some people alone to bear public burdens which, in fairness and justice, should be borne by the public as a whole." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123–24 (1978). As alleged, the money the City received for the sale of Plaintiffs' vehicles was placed in the City's corporate fund—its general expense fund. (Am. Compl. ¶ 38.) Further, in 2017, URT paid $4 million for 24,000 vehicles with a combined value of $22 million. (*Id.* ¶ 55.) Because the vehicles sold to URT are, on average, worth considerably more than URT pays for them, the surplus value of the sold vehicles is part of the City's payment to URT. (*Id.*) As Plaintiffs' cars were sold to generate revenue for the City's general operating budget and to pay URT for its towing and impound services, Plaintiffs have alleged that their property was taken for a public use.

In arguing to the contrary, Defendants cite cases regarding tax sale forfeiture. *See Balthazar v. Mari Ltd.*, 301 F. Supp. 103, 105 n.6 (N.D. Ill.), *aff'd*, 396 U.S. 114 (1969) (tax sale of property was not taking of private property for public purpose under the Fifth Amendment); *In re Murphy*, 331 B.R. 107, 128 (Bankr. S.D.N.Y. 2005) (tax sale does not improperly place public burden on private individual). But in those cases, the proceeds of the tax sale were credited

against the debtors' obligations. Thus, those courts could conclude that the takings were not for a public purpose but instead to satisfy the owners' debts. Here, the entirety of the revenue generated from the vehicle sales is used to pay the City's expenses and none of it goes towards the vehicle owner's debt to the City.

Accordingly, the Court finds that Plaintiffs have adequately pleaded a public purpose associated with the alleged takings. As there is no dispute that Plaintiffs were not compensated for their lost vehicles—the third element of a Takings Clause claim—the Court finds that Counts IX and X state viable Takings Clause claims.

## II.    Two-Notice Requirement (Counts V, VI, VII, and VIII)

Plaintiffs allege that Defendants violated the MCC by failing to send them two notices warning them of their vehicles' pending disposal. They seek injunctive and declaratory relief (Count V), compensation for unjust enrichment (Count VI and VII), and mandamus relief ordering the sending of such notices (Count VIII) for this alleged violation. Defendants argue that these claims must be dismissed because Plaintiffs were only entitled to one notice.

State law provides for the disposal of unclaimed vehicles by the City when a vehicle "remains unclaimed . . . for a period of 18 days after notice has been given under Sections 4-205 and 4-206 of this Code, if during that 18 days the possessor of the vehicle has sent an additional notice by first class mail." 625 ILCS 5/4-208(a). So state law requires two notices prior to disposal: a first notice that starts the 18-day clock and a second notice sent by first class mail during those 18 days.

The MCC also addresses notice requirements for impounded vehicles. MCC § 9-92-070(a) requires that whenever a vehicle is impounded "pursuant to the traffic code," the owner must be sent a notice (if possible) by certified mail within ten days. MCC § 9-92-100(a), in line with state

11

law, allows for disposal of "abandoned, lost, stolen, or other impounded motor vehicle(s)" provided that either (a) the owner has not claimed the vehicle within 18 days after a first notice or (b) the City has sent an additional notice by mail during the 18-day period. A separate notice provision is described in MCC § 9-100-120(f), which requires that a notice of impoundment be sent to a vehicle's owner within ten days of impoundment warning the owner that the vehicle may be disposed of pursuant to the Illinois Vehicle Code if the owner does not claim the vehicle (and pay the outstanding debt) within 21 days. MCC § 9-100-120(f).

The City acknowledges that MCC § 9-92-100(a) requires two notices of impoundment prior to disposal but contends that MCC § 9-100-120(f) supersedes those notice requirements. As the City urges, a more particular statutory provision generally prevails over a broader provision, and a court's interpretation should not render statutory language meaningless or superfluous. *See Vill. Of Chatham v. County of Sangamon*, 837 N.E. 2d 29, 46 (Ill. 2005); *Sylvester v. Indus. Comm'n*, 756 N.E. 2d 822, 827 (Ill. 2001). But here, MCC § 9-100-120 does not provide for or authorize the disposal of impounded vehicles. Instead, it only speaks to notice requirements regarding towing and impoundment of vehicles for ticket debt. *See* MCC § 9-100-120(f). Thus, the procedures for such disposal must be determined by reference to MCC § 9-92-100 (which addresses the disposal of unclaimed vehicles). Two notices are required prior to disposal by MCC § 9-92-100(a), in alignment with the applicable state law, 625 ILCS 5/4-208(a). Therefore, Plaintiffs have adequately pleaded that the City was required to send two notices of the impoundment and pending disposal of their vehicles but only sent one.

The parties also contest whether the Illinois state law requiring two notices of pending vehicle disposal, 625 ILCS 5/4-208, has been superseded by the City's traffic code pursuant to its home rule authority. *See* Ill. Const. art. VII, § 6(a). Certainly, the City may adopt ordinances that

12

"supersede or limit a conflicting [state] statute." *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 988 N.E.2d 75, 84 (Ill. 2013). But here, the Court finds no conflict between the two-notice requirement of the state statute and the two-notice requirement of the City's ordinance. Further, MCC § 9-100-120(f) incorporates the state statute by reference, requiring that a notice be sent within 10 days of impoundment and stating, "if the vehicle is not claimed within 21 days from the date of notice, the vehicle may be sold or otherwise disposed of in the manner prescribed by ***Section 4-208 of the Illinois Vehicle Code***." (emphasis added). While the City argues that this ordinance only incorporates the disposal provisions of the statute, and not the notice provisions, the Court is not convinced. The ordinance does not delineate which portions of 625 ILCS 5/4-208 it incorporates and MCC § 9-100-120 does not specify the procedures for the disposal of vehicles. The Court does not reach the question of whether 625 ILCS 5/4-208(a) was specifically intended to limit the City's home rule power because it finds no intent in the ordinance to break from the state statute's notice requirements.[3]

In its motion, URT also contends that Counts V and VII (for declaratory and injunctive relief and unjust enrichment) should be dismissed because neither MCC § 9-92-100 nor 625 ILCS 5/4-208 provide for a private right of action. But even though Plaintiffs allege violations of those statutes, they do not seek to bring a cause of action directly under either of them. Instead, Plaintiffs plead the violations and seek a declaration of their rights to establish the unlawfulness of Defendants' practice of taking and disposing of vehicles (as alleged in Counts IX and X), and thus to provide a basis for the unjust enrichment claims (alleged in Counts VI and VII). *See*

---

[3] The City in its reply further contends that Plaintiffs have not properly sought relief pursuant to 625 ILCS 5/4-208 because Plaintiffs did not invoke the state statute in their initial complaint and Plaintiffs did not ask to plead new state law claims in their motion to amend. The Court notes its obligation to " freely give leave [to amend] when justice so requires" and concludes that Defendants have not been prejudiced by this addition to Plaintiffs' First Amended Complaint. Fed. R. Civ. P. 15(a)(2).

*Santiago*, 446 F. Supp.3d at 368 ("So if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011)). The Court therefore finds no reason to dismiss Counts V, VI, VII, and VIII on the ground that MCC § 9-92-100 and 625 ILCS 5/4-208 provide no private right of action of their own.

### III. Unjust Enrichment (Counts III, IV, VI, and VII)

In Counts III and IV, Plaintiff assert state common-law claims for unjust enrichment against the City and URT based on the alleged unconstitutional takings that form the basis for Counts I and II. The doctrine of unjust enrichment provides relief where "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). However, "[u]nder Illinois law, there is no stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). Instead, "an unjust enrichment claim will stand or fall with related claims founded on the same improper conduct." *Anderson v. Rush St. Gaming, LLC*, No. 1:20-cv-04794, 2021 WL 4439411, at *7 (N.D. Ill. Sept. 28, 2021) (internal quotation marks omitted). *See also Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019) (holding that under Illinois law unjust enrichment is a "request for relief" that is "tied to the fate" of an independent cause of action). Here, the Court has dismissed the related claims in Counts I and II. Accordingly, the corresponding unjust enrichment claims in Counts III and IV must be dismissed as well.

Counts VI and VII, however, assert claims for unjust enrichment based on the allegedly unlawful taking of vehicles without first satisfying the two-notice requirement. As discussed above, those claims are adequately pleaded in Counts V, IX, and X. Accordingly, the related unjust enrichment claims also survive: Plaintiffs have adequately pleaded that Defendants unjustly (due to unconstitutional takings and two-notice requirement violations) retained a benefit (the proceeds from the sales of vehicles) to Plaintiffs' detriment (Plaintiffs lost their vehicles and the benefit of the value of those vehicles without any corresponding reduction in their debts), and Defendants' retention of the benefit allegedly violate fundamental principles of justice, equity, and good conscience. For these reasons, Counts VI and VII survive.

IV.     **Unlawful Seizure (Counts XI and XII)**

In Counts XI and XII, Plaintiffs allege that the disposal of their vehicles—including the City's failure to send a second notice—violated the Fourth Amendment and Article I, section 6 of the Illinois Constitution (which is governed by the same standard as the Fourth Amendment, *see People v. Caballes*, 851 N.E.2d 26, 45 (Ill. 2006)). Defendants contend that because the seizure of the vehicles was complete at impoundment—and Plaintiffs challenge only the ultimate disposition of their vehicles—the amended complaint fails to state a claim for unlawful seizure.

Generally, the Fourth Amendment does not apply to the Government's treatment of property once the seizure is complete. And "once an individual has been meaningfully dispossessed, the seizure of the property is complete." *Bell v. City of Chicago*, 835 F.3d 736, 741 (7th Cir. 2016). "In the Seventh Circuit, the Fourth Amendment's protections are 'limited to an individual's interest in retaining [his or her] property,' and 'cannot be invoked by the dispossessed owner to regain [his or her] property.'" *Santiago*, 446 F. Supp. 3d at 362 (quoting *Lee v. City of Chicago*, 330 F.3d 456, 460 (7th Cir. 2003)).

15

Here, Plaintiffs do not contest the City's right to tow and impound their cars for ticket debt, which is the point at which they were meaningfully dispossessed of their vehicles. *See Bell*, 835 F.3d at 741 (seizure complete when vehicle seized and impounded). Thus, Plaintiffs' Fourth Amendment claims find no footing. As Plaintiffs note, a seizure that is initially reasonable can become unreasonable—and thus violate the Fourth Amendment—in its execution. *See United States v. Jacobsen*, 466 U.S. 109, 124–25 (1984) (balancing Fourth Amendment property interests and government interests to determine whether destruction of portion of suspected drugs in drug test was reasonable); *United States v. Place*, 462 U.S. 696, 709–10 (1983) (while canine sniff of luggage did not constitute search, 90-minute detention of luggage to effectuate search constituted unreasonable seizure). But the Seventh Circuit has held that de facto forfeitures of property through municipal towing and impoundment are limited by "due-process guarantees," not the Fourth Amendment. *Lee*, 330 F.3d at 466. Thus, the seizures here were complete when the vehicles were towed and impounded; the subsequent sale, auction, or destruction of the vehicles was not a further seizure. The Court therefore dismisses Counts XI and XII.

## V.      Demands for Injunctive and Declaratory Relief (Counts I, IX, XI)

Defendants challenge Plaintiffs' standing to seek declaratory and injunctive relief in Counts I, IX, and XI. To demonstrate standing for injunctive relief, Plaintiffs "must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (internal quotation marks omitted). They must similarly show "a realistic danger of sustaining a direct injury" to seek declaratory relief. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).

As alleged in the First Amended Complaint, Walker has obtained a new vehicle but still has three unpaid tickets. (*See* Am. Compl. ¶ 58.) The MCC therefore allows the City to

immobilize, tow, and scrap her new vehicle and any other vehicle she might acquire. MCC § 9-100-120(b). Defendants argue that this threat is not immediate because Walker would have up to thirty-six days to pay the outstanding tickets following impoundment. But Walker would be harmed by the seizure of her car on threat of taking without compensation as well as by the ultimate sale of her car. And it is not speculative that her new car is subject to being towed—she continues to face this risk because she has not paid her ticket debt. Thus, Walker's case is distinguishable from *Simic*, in which the risk that the plaintiff would again be ticketed for driving while using a cell phone was merely conjectural. 851 F.3d at 738. In *Simic*, the Seventh Circuit also weighed the assumption that "[f]or purposes of standing to seek injunctive relief against future harm, courts generally assume that litigants 'will conduct their activities within the law and so avoid prosecution and conviction.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). But Walker is still in danger of suffering future injuries not because she may again be ticketed for traffic infractions but because she has not (or cannot) pay her outstanding ticket debt. Thus, the Court finds, at least at the pleadings stage, that Walker has standing to pursue injunctive and declaratory relief.

The Court also declines to hold at this early stage that injunctive and declaratory relief is not appropriate as to Walker because money damages can adequately remedy her harms. While the Seventh Circuit has cautioned that there is a "strong presumption that damages, not injunctive relief, is the appropriate remedy in a Takings Clause action," it has also noted that "it is well accepted that, when the government has taken property for a private, rather than a public, use, injunctive or declaratory relief may be appropriate." *Peters v. Village of Clifton*, 498 F.3d 727, 732 (7th Cir. 2007). URT is a private beneficiary of the alleged scheme; thus, Plaintiffs might be able to establish on the pleaded facts that the City's takings are for a private use. But while the

Court may ultimately decline to grant injunctive or declaratory relief, it is too early to foreclose that the possibility as a matter of law.

Plaintiffs have not, however, offered a compelling theory for why Walawski is likewise subject to an immediate threat of future injury. Instead, Plaintiffs cite only the general proposition that tickets issued to drivers in low- and moderate-income zip codes and zip codes with more residents from minority populations are more likely to go unpaid, leading to fees, impoundment, and debt. They suggest that the Court should presume that low-income citizens will be unable to pay the City's fines and penalties. But Plaintiffs have not alleged that Walawski is unable to pay his tickets, that he lives in any particular zip code, that he earns a low income, or that he is likely to suffer the same harm again. The Court must evaluate this argument under the facts pleaded by Plaintiffs, which do not demonstrate that Walawski is subject to an immediate threat of future injury or even faces a realistic danger of direct injury (as required to seek declaratory relief). The Court thus dismisses Counts I, IX, and XI as to Walawski to the extent that he seeks declaratory and injunctive relief.[4]

### VI.    URT's Liability for the Alleged Unconstitutional Takings (Counts X)

URT separately challenges whether it can be held liable for the allegedly unconstitutional takings asserted in Count X. For this claim under § 1983, Plaintiffs must plausibly allege that URT (1) had an unconstitutional or otherwise improper policy or custom that (2) was the "moving force of the constitutional violation." *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). To act as a "moving force," the challenged action must be "taken with the requisite degree of culpability" and involve "a direct causal link between the municipal action and the

---

[4] As discussed above, Counts I and XI are also dismissed as to both Plaintiffs because they have not stated a claim for a constitutional violation. The Court includes the separate discussion of each Plaintiff's standing with respect to those claims for the sake of completeness and in case Plaintiffs seek to file a second amended complaint.

deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). Plaintiffs must also adequately plead that URT's conduct was "under color of law," which is generally not true of private parties. *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 936 (1982).

The First Amended Complaint describes only the City, not URT, as the party responsible for disposing of Plaintiffs' vehicles and failing to provide adequate notice. (Am. Compl. ¶¶ 44–53, 57–60.) While Plaintiffs make the conclusory allegation that URT carries out the "entire regime—from the initial tow to the ultimate disposal of vehicles," the First Amended Complaint's allegations show clearly that URT is the purchaser, not the seller, of the vehicles at disposition. (*Id.* ¶¶ 55–59.) And Plaintiffs have identified no authority indicating that the purchaser of property taken by the state in violation of the Fifth Amendment has committed a constitutional violation. While Plaintiffs contend that the boot, tow, and scrap program was delegated to URT, their pleading does not plausibly establish that URT was responsible for the disposal of the vehicles (specifically, the sale of those vehicles from the City to URT) or, more importantly, for the notices sent to the vehicles' owners.

A tow company may act under color of state law when it tows and impounds vehicles on behalf of a city. *See Doe v. City of Chicago*, 39 F. Supp. 2d 1106, 1112 (N.D. Ill. 1999); s*ee also Stypmann v. City & Cty. of San Francisco*, 557 F.2d 1338, 1341 (9th Cir. 1977) (holding that towing and impoundment of vehicle by towing company was state action pursuant to 42 U.S.C. § 1983, but not discussing issues of notice or disposal of impounded vehicles). To be liable here, however, URT must be the "moving force" behind the violations. As pleaded, URT is implicated only in the towing and impoundment of the vehicles, and Plaintiffs do not adequately allege that the towing and impoundment, standing alone, violated the Takings Clause. The parties debate

whether URT's actions were "under color of law," but the Court need not reach this issue because Plaintiffs have no plausibly alleged that URT was the moving force of the violations. The Court therefore dismisses Plaintiffs' claims against URT in Count X.

### VII.    URT's Immunity Pursuant to Hold Harmless Provision (Counts V and VII)

URT also claims immunity against Plaintiffs' remaining state law claims (Counts V and VII) pursuant to the Illinois Vehicle Code, which provides:

> [A] towing service owner, operator, or employee shall not be held to answer or be liable for damages in any action brought by the registered owner, former registered owner, or his legal representative, lienholder or any other person legally entitled to the possession of a vehicle when the vehicle was processed and sold or disposed of as provided by this Chapter.

625 ILCS 5/4-213(a). On its face, this statute protects URT from liability—including damages and otherwise being "held to answer"—for the processing and disposal of Plaintiffs' vehicles. However, this statute also limits the scope of its protection to the disposition of vehicles "as provided by this Chapter." Here, Plaintiffs have alleged that a section of this chapter, namely 625 ILCS 5/4-208(a), was not followed because the City failed to send required notices. The scope of immunity under 625 ILCS 5/4-213(a) is limited to actions *in compliance* with the Vehicle Code. *See Bell Leasing Brokerage, LLC v. Roger Auto Serv., Inc.*, 865 N.E.2d 558, 568 (Ill. App. Ct. 2007) (no immunity under 625 ILCS 5/4-213(a) where towing company did not comply with applicable provisions of the Code).

URT argues that *Bell Leasing* should be limited to its facts, but the court there specifically held that a towing company is not entitled to immunity for actions not in compliance with the Vehicle Code. URT also contends that 625 ILCS 5/4-213(a) could not require strict compliance with the Vehicle Code because doing so makes its immunity provisions useless: tow companies do not need immunity when they comply with the law. The Court disagrees. The statute provides

immunity to tow companies not only for violations of the Vehicle Code but also for other causes of action—a tow company might comply with the Vehicle Code while incurring liability on an another basis. Further, the immunity clause clarifies the protections available to tow companies when they comply with the Code. The Court finds no reason to conclude that the immunity clause exempts tow companies from liability even when they, for example, charge more money than allowed for by statute or fail to wait for the required period before disposing of vehicles. The Court declines to dismiss Counts V and VII against URT on these grounds.

## CONCLUSION

For the above reasons, Defendants' motions to dismiss (Dkt. Nos. 31, 41) are granted in part and denied in part. The Court dismisses Counts I, II, III, IV, XI, and XII in their entireties; Count X is dismissed with respect to Defendant URT only; and the request for declaratory and injunctive relief in Count IX is dismissed with respect to Plaintiff Walawski only. The motions are otherwise denied.

ENTERED:

Dated: December 6, 2022

_____
Andrea R. Wood
United States District Judge